

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL B. SIMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 05 C 1447 |
| | ) | |
| | ) | Judge Mark Filip |
| SUZANNE HASTINGS, and | ) | |
| U.S. PAROLE COMMISSION, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves the petition of Daniel B. Sims ("Sims" or "Petitioner"), a current parolee from a 1982 federal sentence of 25 years' imprisonment. Sims demands termination of his federal parole supervision. *See* D.E. 12 (Sims's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody"). For the reasons stated herein, the Court denies the petition.

### I. BACKGROUND AND PROCEDURAL HISTORY

On July 8th, 1982, Daniel B. Sims was sentenced in the United States District Court for the Western District of Michigan to twenty-five years' imprisonment. That sentence was imposed as a result of Sims's convictions on thirteen counts of mail fraud, in violation of 18 U.S.C. § 1341. *See United States v. Sims*, 755 F.2d 1239, 1239-40 (6th Cir. 1985). In the underlying federal prosecution, Sims was proved to have engaged in an extensive fraud scheme, which included the submission of fraudulent insurance claims "for deliberately set fires that damaged. . . [Sims's] home and place of business, for staged burglaries, for staged automobile

1

accidents, and for non-existent personal injuries." *Id.* at 1240. The district court's sentence represented a sentence of "five years on each of the first five counts, to run consecutively, and five years on each of the remaining eight counts, to run concurrently with each other and the sentences on the first five counts, or twenty-five years total." *United States v. Sims*, 791 F.2d 935, 1986 WL 16865, *1 (6th Cir. 1986) (unpub); *see also id.* (denying Sims's motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure, which motion contended that Sims's sentence was illegal "because Congress did not intend that consecutive sentences be imposed for multiple mail fraud counts in furtherance of a single fraudulent scheme.").[1] In connection with his sentence, Sims was entitled to 146 days credit for time spent in jail and the Bureau of Prisons computed the expiration of his maximum term of imprisonment, or full term date, as February 11, 2007–or 25 years after Petitioner's sentencing date, less 146 days of good time credit. (D.E. 17, App. at 3, 7.)

On September 20, 2002, Sims was mandatorily released. (*Id.*, App. at 7.) He signed a

---

1 During his incarceration, Sims filed a number of lawsuits, none of which appears to have been successful in any part. *See Sims v. Michael Dehaan, U.S. Probation Officer, et al.*, 767 F.2d 921, 1985 WL 13404, *1 (6th Cir. 1985) (unpub) (affirming dismissal of Sims's mandamus petition directed towards district judge, United States Attorney, and probation officer because the action was "frivolous and [therefore] dismissal under 28 U.S.C. § 1915(d) was appropriate"); *Sims v. Clark*, 42 F.3d 1389, 1994 WL 683974, *1-2 (6th Cir. 1994) (unpub) (affirming dismissal of Sims's *Bivens* claim and request for habeas relief in the form of restored good time credits, all in connection with a proceeding in which Sims alleged that defendants violated his due process rights during administrative proceedings that led to a guilty finding that Sims as a prisoner possessed heroin and a sharp instrument); *Sims v. Bureau of Prisons, et al.*, 76 F.3d 388, 1996 WL 30294, *1 (9th Cir. 1996) (unpub) (affirming dismissal of Sims's suit claiming a *Bivens* violation and violation of Sims's due process rights in connection with Sims's reclassification by prison authorities to a higher security risk status); *Sims v. Bureau of Prisons, et al.*, 100 F.3d 964, 1996 WL 616296, *1 (9th Cir. 1996) (affirming dismissal of Sims's *Bivens* suit concerning, *inter alia*, "defendants' extraction of Sims's blood and taking [of his] fingerprints for use in an investigation of [an] assault" on another inmate).

certificate acknowledging his obligation to remain under supervision until August 15, 2006. (*Id.*, App. at 8-9.) Sims subsequently violated the terms of his parole by falsifying his supervision reports, and by failing to report to his U.S. Probation Officer as directed. (*Id.*, App. at 10.) The Parole Commission revoked Sims's mandatory release for these violations, and Sims was returned to custody of the Bureau of Prisons via an order of August 12, 2003. (*Id.*, App. at 10-12.)

On February 13, 2004, Sims was again released on parole from the FCI at Pekin, Illinois, with a total of 1,092 days remaining to be served. (*Id.*, App. at 3, 13.) He is currently residing near Chicago, Illinois, and his parole certificate requires him to remain under supervision until February 9, 2007, in the Northern District of Illinois. (D.E. 16, D.E. 17, App. at 3, 13-14.)

On February 23, 2004, Sims filed his "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody." (D.E. 12.) Sims argued that the date of his mandatory release on September 20, 2002 was the maximum sentence that he could serve, and that the Parole Commission lost jurisdiction over him on that date. (*Id.* at 2, 4.)

This petition was originally filed in February 2004 in the United States District Court for the Central District of Illinois. (D.E. 12.) In February 2005, the case was transferred to this court because this is the district in which Sims is now on supervision as a parolee. (D.E. 19.)

II. DISCUSSION

To raise a claim under 28 USC § 2241, the petitioner must be in custody. *See Maleng v. Cook*, 490 US 488, 490-91 (1989) (citing 28 U.S.C. §2241(c)(3)) (per curiam). This court may hear this petition because Sims, as a parolee, fulfills the custody requirement, notwithstanding

3

that he is not in prison. *See Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963).

*Pro se* pleadings, such as Sims's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody" (D.E. 12), are to be construed generously. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Precedent also teaches, however, that a court, of course, should not abandon its neutral role and begin creating arguments for a party, even an unrepresented one. *See, e.g., Anderson*, 241 F.3d at 545 (collecting cases).

Sims's argument in his petition is presented in quite a barebones fashion. He states that "Petitioner Maximum [sic] term of sentence imposed as provided by law end [sic] September 20, 2002 or there about." (D.E. 12 at 4.) In summarizing the grounds for relief, Petitioner further states that he was "arbitrarily and capriciously placed on parole under Pub. L. 98-473 sections 4163, 4164," and he adds that "[b]oth sections 4163, and 4164 were repealed by the Sentencing Reform Act of 1984, Pub. Law 98-473 (act) effective November 1, 1992." (*Id.* at 5.) As best the Court can tell, Sims appears in his petition to allege that the United States Parole Commission lost jurisdiction over him on September 20, 2002, his original mandatory release date, because 18 U.S.C. § 4163 and § 4164, governing release of federal prisoners as parolees, were repealed in part by the Sentencing Reform Act of 1984.

Under the system of parole established in 18 U.S.C. §§ 4163-4164, Sims is properly subject to jurisdiction after being paroled. Once Sims was mandatorily released on parole pursuant to 18 U.S.C. § 4163 on September 20, 2002, he became subject to parole under § 4164 until the expiration of his maximum term, less 180 days. 18 U.S.C. §§ 4163-64; *accord Martin v. Luther*, 689 F.2d 109, 113 (7th Cir. 1982) ("As a mandatory releasee under 18 U.S.C. § 4163,

4

petitioner was 'deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.'") (quoting 18 U.S.C. § 4164). Furthermore, Sims remains under federal authority during that entire period of time, and if Sims violates the terms of his parole at any time during that period, he is subject to revocation and appropriate sanction, including his return to prison. *See Martin*, 689 F.2d at 113; *accord, e.g., id.* at 115 n.5 ("[T]he parole violator warrant may issue within the mandatory releasee's maximum term less 180 days, and the statute merely provides that a preliminary hearing be held without unnecessary delay.") (internal quotation marks and citation omitted). Accordingly, Sims's main argument in his petition, which he repeatedly asserts, that "The Petitioner Maximum [sic] term of sentence imposed as provided by law end [sic] September 20, 2002," is without foundation. (D.E. 12 at 2; *see also, e.g., id.* at 4 ("The Petitioner Maximum [sic] term of sentence imposed as provided by law end [sic] September 20, 2002.")).²

---

2 Respondents also address any possible argument by Petitioner concerning any alleged implied repeal of 18 U.S.C. § 4164 by Congressional reference to mandatory release in 18 U.S.C. § 4210 (1976). It is by no means clear that Petitioner even raised this issue in his pleadings by his general reference to the repeal of 18 U.S.C. § 4163 and § 4164. However, to the extent such an argument may have been made, there is no implied repeal at issue in this case. It is well settled in federal precedent that repeals of federal laws by implication "are not favored" and "will not be found unless Congressional intent to repeal is clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (internal citation and quotation marks omitted); *accord, e.g., Morton v. Mancari*, 417 U.S. 535, 549-50 (1974) (collecting Supreme Court precedent and discussing "the 'cardinal rule . . . that repeals by implication are not favored.'") (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)). Section 4210(b) of Title 18 plainly provides that "the jurisdiction of the Commission over the parolee shall terminate no later than . . . the maximum term . . . for which he was sentenced, except that . . . jurisdiction shall terminate [earlier] to extent provided under section 4164." Section 4164, in turn, provides that a mandatorily released prisoner must continue to serve his sentence "as if on parole" (18 U.S.C. § 4164) to the full term of his sentence, less a reduction of 180 days (at least where the parolee does not thereafter violate the terms of his parole, at which time he can be appropriately sanctioned). *See, e.g., Wilkerson v. U.S. Board of Parole*, 606 F.2d 750, 751 (7th Cir. 1979) (per curiam) (collecting cases and

Although the parole provisions under 18 U.S.C. §§ 4163-64 have been partly repealed (in that there is no parole commission authority or parole provisions for people convicted in the post-Guidelines world), those provisions nonetheless apply to Sims because he was convicted of a crime committed prior to the enactment of legislation that first introduced the federal Sentencing Guidelines regime. The Sentencing Reform Act of 1984 only withdrew the authority of the parole commission and the related parole provisions, at least as relevant here, for offenses committed after November 1, 1987. *See Norwood v. Brennan*, 891 F.2d 179, 181 (7th Cir. 1989); *accord, e.g., United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167, 1171 (3d Cir. 1989) ("[Petitioner] was convicted . . . [in] 1982 of crimes committed between 1974 and 1978. Clearly the old sentencing provisions apply to him."). In addition, the Sentencing Reform Act specifically provided for the continuation of the Parole Commission to oversee the parole process for offenses committed prior to 1987. *See* 18 U.S.C.A. § 3551 (historical and statutory notes concerning effective date of repeal). The continuation of the Parole Commission to oversee parole provisions for old offenses has been repeatedly extended, and such continuation currently has been extended until November 1, 2005. *See Page v. Pearson*, 261 F. Supp. 2d. 528, 531 n.3 (E.D. Va. 2003) (Ellis, J.) (noting that the Parole Commission was extended until November 1,

---

holding that the Parole Commission, after revoking parole, has discretion to determine whether to grant the prisoner "credit for time spent on parole and good-time earned prior to release"); *Rasco v. Beeler*, 732 F.Supp. 75, 78 (N.D.Ill. 1990) (collecting cases). A fair reading of Sections 4210 and 4164 makes clear that Petitioner's putative argument–*i.e.*, that a prisoner's mandatory release to parole in effect becomes the maximum term date for his sentence–is without foundation. Furthermore, and perhaps even more to the point, the Seventh Circuit's holding in *Martin v. Luther*, 689 F.2d 109, 113 (7th Cir. 1982), teaches that a mandatory release parolee remains under the control of federal authorities and can be revoked at any time, so long as a violator warrant for the parolee issues prior to 180 days before the termination of the full term of imprisonment initially imposed. *Accord Joiner v. Henman*, 902 F.2d 1251, 1252 (7th Cir. 1990).

2005 by the 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, §11017, 116 Stat. 1758, 1824-25 (2002)). Furthermore, the Seventh Circuit has squarely held that these extensions to the authority of the Parole Commission have addressed and eliminated any *ex post facto* concerns regarding the Parole Commission and its prospective elimination for offenses prosecuted after the enactment of the sentencing reform statutes. *See, e.g., Norwood*, 891 F.2d at 182 (collecting cases); *see also* H.R. Rep. No. 101-734, 101st Cong., 2nd Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6860, at *6866 (discussing the reasons for the extension of the Parole Commission). Thus, Sims does not have any valid *ex post facto* claim.

As indicated, Sims's petition offers virtually no cited authority or argument in support of his demand. A review of the transferred record from the Central District of Illinois, however, reflects that at some point Sims filed a "memorandum of law" there. (*See* D.E. 4.) Nothing in Sims's three-page memorandum materially affects the analysis of his petition. Nonetheless, in the interests of completeness (and without prejudice to the government's ability to argue waiver or other procedural bars if such issue(s) ever were material, given that the Court is reaching outside of the adversarial presentations of the parties to the benefit of Sims), the Court will briefly address any additional arguments in Sims's memorandum as best they can be divined.

First, as best the Court can tell, Sims asserts that the Sentencing Reform Act of 1984 provided that the Parole Commission "would be abolished five years after the effective date of the Act, that is on November 1, 1992." (*Id.* at 2.) As previously mentioned, Congress has since repeatedly extended the authority of the Commission, such that this point is not even correct in any relevant sense as a matter of fact, much less a grounds for granting any relief or ordering cessation of Sims's parole. Moreover, even if the Commission had been abolished as originally

planned, the result apparently would have been to transfer enforcement jurisdiction to the federal district courts with regard to individuals like Sims who are on parole or mandatory release. Section 235(b)(4) of the Sentencing Reform Act of 1984 provides for such transfer, and also keeps all laws pertaining to the terms, conditions, and revocation of release "in effect as to the individual until the expiration of his sentence . . . ." Pub.L. No. 98-473 § 235(b)(4), 98 Stat. 2032. Thus, even if the Commission were not still functioning in relevant terms for purposes of this case (which it is because of the extensions), Sims would not appear to be able to rely on any provision of the Sentencing Reform Act of 1984 to nullify his parole obligations.

Petitioner also cites *Romano v. Luther*, 816 F.2d 832 (2d Cir. 1987), and suggests that it affords him a basis to terminate his parole. (D.E. 4 at 2.) Sims's argument is misplaced. *Ramano* was speaking of the need for the Parole Commission to set parole dates for prisoners who would be incarcerated beyond the expected lifetime of the Parole Commission. *Id.*, 816 F.2d at 839. Parole dates needed to be set early enough so that a prisoner could appeal the date before the expected abolition of the Parole Commission. *Id.* Such a concern would appear to be irrelevant with respect to Sims: he does not allege that he did not receive a parole date, he just wants his parole period to be effectively eliminated based on the incorrect notion that the Parole Commission had no authority over him after 2002. Furthermore, and independently, as mentioned, the existence of the Commission has been repeatedly extended, such that any concern about needing to set parole dates generally in advance of the abolition of the Commission would appear to be largely moot as to *any* prisoners, and certainly of no relevance as to Sims, who already has been released on parole.

Finally, Petitioner reiterates his *ex post facto* argument. (D.E. 4 at 3.) This argument has

been addressed above, but the Court notes that Sims's main cited case, *Weaver v. Graham*, 450 U.S. 24 (1981), has been cited by federal appellate authority in squarely rejecting an *ex post facto* challenge to the treatment of parolees under the Sentencing Reform Act of 1984 and related enactments. *See United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167, 1172-73 (3d Cir. 1989). Sims's other cited authority, *United States v. Harris*, 108 F.3d 1107 (9th Cir. 1997), has no apparent relevance to this case. *Harris* affirmed the dismissal of a challenge under 28 U.S.C. § 2255 to a federal bank robbery conviction, notwithstanding the petitioner's contention that there was no federal jurisdiction to prosecute such a crime. *Id.* at 1109. It has been settled in federal law for a very long time, however, that there is and was federal jurisdiction for entry of Mr. Sims's thirteen mail fraud convictions. *See Badders v. United States*, 240 U.S. 391, 393 (1916) (Holmes, J.) (dismissing, as "need[ing] no extended answer," the argument that Congress lacked authority to punish fraud involving the United States mails). As a result, this issue, like Sims's others, affords him no basis to demand termination of his parole.

III. CONCLUSION

For the reasons set forth above, Sims's petition is respectfully rejected. None of Sims's arguments affords any basis in law to terminate his federal parole.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: June 27, 2005

9